DECISION
Relator, The Stouffer Corporation, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding temporary total disability ("TTD") compensation to respondent, Billie L. Stanley, beginning April 27, 2000, and to enter an order denying TTD compensation as of that date.
Pursuant to Civ.R. 53, and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the commission did not abuse its discretion in determining that there was a new and changed circumstance justifying a new period of TTD compensation beginning April 27, 2000. The magistrate found that there was evidence presented to and relied upon by the commission to justify its award of TTD compensation. Specifically, the magistrate pointed to Dr. Sybert's September 11, 2000 opinion that claimant's pain had deteriorated to the point that claimant now wants to proceed with the surgery. This increase in the level of pain referenced by Dr. Sybert was evidence upon which the commission could rely to support a change of circumstance justifying a new period of TTD compensation. Accordingly, the magistrate determined that the requested writ should be denied.
Relator filed objections to the magistrate's decision, essentially rearguing the points addressed by the magistrate. For the reasons set forth in the magistrate's decision, relator's arguments are unpersuasive. In addition, Drs. Kistler and Dixon noted that claimant's condition had gotten worse. Furthermore, there was no evidence before the commission indicating that claimant's earlier decision to forego surgical fusion caused the new and changed circumstances. Lastly, the fact that claimant has not worked since her industrial injury does not establish that claimant has abandoned the labor market.
Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; Writ of mandamus denied.
TYACK, P.J., and BRYANT, J., concur.
 APPENDIX A IN MANDAMUS
In this original action, relator, The Stouffer Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding temporary total disability ("TTD") compensation to respondent Billie L. Stanley beginning April 27, 2000, and to enter an order denying TTD compensation beginning April 27, 2000.
Findings of Fact:
1. On January 13, 1984, Billie L. Stanley ("claimant") sustained an industrial injury while employed as a "linen room supervisor" for relator, a self-insured employer under Ohio's Workers' Compensation laws. The industrial claim was initially allowed for "cervical thoracic and lumbosacral strain and sprain; herniated disc L4-5" and was assigned claim No. 835144-22.
2. Claimant has not worked since October 1985.
3. In January 1989, claimant underwent a lumbar laminectomy performed by Dr. Yashon.
4. In February 1990, the commission awarded claimant TTD compensation from July 15, 1987 through March 5, 1989. Compensation after March 5, 1989 was denied on grounds that the attending surgeon, Dr. Yashon, had indicated that claimant could return to her former position of employment as of March 6, 1989. TTD compensation after March 5, 1989, was denied for the additional reason that the attending physician had indicated that the disability had become permanent.
5. In February 1995, attending physician, Charles Kistler, M.D., referred claimant for a consultation with neurosurgeon, Robert A. Dixon, D.O. Following a February 7, 1995 examination, Dr. Dixon wrote:
 Her pain first onset from a work related injury in 1984 and she subsequently underwent a lumbar laminectomy in 1989 for left leg pain and back pain. She had improvement for approximately three months which she felt was related to inactivity. She subsequently had recurrence of her left leg pain which has been present since that time. Her most comfortable position is laying down, taking a muscle relaxant and putting a warm, wet towel across her low back. She denies any changes in her bowels or bladder except for occasional diarrhea. Her left leg gives out on her at times especially with ambulation and prolonged standing. Her pain, numbness and tingling worsen down her left leg with prolonged standing or back extension. She has soreness in her left hip with pain radiating down into her posterolateral thigh and lateral calf on the left side.
* * *
IMPRESSION:
1. Myofacial syndrome lumbosacral spine (846.01).
2. Foraminal stenosis L4-5 ((724.02).
 3. Disc degeneration with bilateral foraminal stenosis L4-5, L5-S1 (722.52).
 RECOMMENDATIONS: I have discussed with her foraminotomy with lateral fusion procedure in a preliminary fashion. In light of these symptoms progressing from her original injury in 1984 with a high degree of medical certainty this foraminal narrowing is a direct result of her original injury. The fact that she has instability at L4-5 is most likely a result of facotectomy, a result of her previous surgery from 1989. Foraminal decompression would only provide partial relief of her radicular pain and she would require a lumbar and lumbosacral fusion to give her optimal benefits from surgical intervention in regard to her back pain. * * *
6. In May 1995, Dr. Kistler referred claimant to orthopedic spine surgeon, Daryl R. Sybert, D.O., for a second opinion. Following a May 15, 1995 examination, Dr. Sybert wrote:
 She states that currently her left leg pain extends down the posterolateral aspect of her thigh and into the lateral aspect of her calf. It has gotten to the point where the leg is giving way and she has had several falls secondary to this giving way. The left lower extremity is numb, she states, intermittently in the above distribution.
* * *
 She states that prolonged sitting or walking, bending forward and backward in her lumbar area worsen her chronic pain state. * * *
* * *
 ASSESSMENT: Post-traumatic back and radiating left leg pain secondary to diffuse annular protrusion (722.10) and secondary lumbar foraminal stenosis, L4 and L5 disc levels (724.02).
* * *
 I do agree with Dr. Dixon's prior recommendation that neural element decompression and spinal arthrodesis is a reasonable option at this point.
7. On January 9, 1996, claimant moved for recognition of additional claim allowances and for authorization of the surgery recommended by Dr. Dixon.
8. Following an April 10, 1996 hearing, a district hearing officer ("DHO") issued an order additionally allowing the claim for "foraminal stenosis at L4-5" and for "disc degeneration at L4-5 and L5-S1." The DHO also authorized a "foraminotomy and lateral fusion" based upon the reports of Drs. Dixon and Sybert. The DHO's order further states:
 The District Hearing Officer finds no new and changed circumstances to justify the reinstatement of Temporary Total Compensation. At this time, Temporary Total Compensation from the date of surgery forward may subsequently be considered by the self-insuring employer upon submission of appropriate proof.
9. The April 10, 1996 DHO's order was not administratively appealed.
10. Claimant did not schedule the surgery authorized by the DHO's order of April 10, 1996.
11. On May 30, 2000, following a April 27, 2000 examination, Dr. Kistler wrote:
 Because the patient has had previous back surgery as a result of this [industrial injury] and because the patient is completely symptomatic with radicular pain and narrowing of her spinal column with foraminal stenosis and her legs giving out on her causing her to fall, and noticeable weakness with some atrophy of the lower extremity muscles, it is my medical opinion, based on reasonable medical certainty, that the patient should have a consultation with Dr. Sybert, a spine surgeon, for possible surgery and anticipation of his examination. The patient has previously been advised by Dr. Dixon that she needs a second spinal surgery and her symptoms have gotten worse since that time. She does need reevaluation by Dr. Sybert and he will need an EMG by Dr. Skeels and MRI prior to his evaluation.
 The patient has not reached maximum medical improvement at this time. * * *
12. On April 27, 2000, Dr. Kistler completed a C-84 on which he certified temporary total disability from April 27, 2000 to an estimated return to work date of July 27, 2000.
13. On September 11, 2000, claimant was again examined by Dr. Sybert, who wrote:
 * * * As you recall, she had provocative discography significant for concordant pain reproduction at L4-5 and at L5-S1. EMG is positive for L5 radiculopathy, and a significant amount of peridural scar is noted at the L4-5 level and recurrent lateral recess stenosis noted on her MRI study of 9/5/00. At this point she has been managed with conservative care electing not to proceed with surgical fusion over the years, but her pain has deteriorated to the point that she now requests to proceed with surgical intervention because of her poor quality of life and chronic pain.
 Today she states she has been authorized by her managed care provider for a two level fusion as we requested on her last visit consisting of re-exploration at L4-5 and L4-S1, interbody and posterolateral fusion with internal fixation to optimize fusion outcome and early rehabilitation.
* * *
 At this point she understands the risks of surgery as well as reasonable goals and expectations with perhaps 60 to 80% pain improvement. I will keep you abreast of her progress.
14. On October 26, 2000, claimant moved for TTD compensation beginning April 27, 2000.
15. In support, claimant cited to the recent reports from Drs. Kistler and Sybert.
16. Following a January 22, 2001 hearing, a DHO issued an order awarding TTD compensation from April 27, 2000 through July 27, 2000, and to continue upon submission of medical evidence. Relator administratively appealed the DHO's order.
17. Following a March 15, 2001 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
 On appeal, the employer raises the issue of res judicata[.] [O]n 04/10/1996, the District Hearing Officer denied Temporary Total Disability Compensation, finding [no] "new and changed circumstances to justify reinstatement of Temporary Total Compensation." The employer argues that this order by the District Hearing Officer on 04/10/1996 precludes the payment of further Temporary Total Disability Compensation. The Staff Hearing Officer disagrees. As the District Hearing Officer noted, the May 30, 2000 letter from Dr. Kistler recites steadily worsening conditions " * * * legs giving out causing her to fall, and noticeable weakness with some atrophy of the lower extremity muscles. * * * "
 The Staff Hearing Officer also finds that the worsening condition does justify a new period of Temporary Total Disability Compensation as was ordered by the District Hearing Officer. Res Judicata doesn't apply in this situation.
 Therefore, the order of the District Hearing Officer is affirmed. Temporary Total Disability Compensation is ordered paid from 04/27/2000 through 07/27/2000 and to continue on submission of medical evidence of Temporary Total Disability Compensation.
The employer's appeal is denied.
 The Staff Hearing Officer relies upon the 05/30/2000 report of Dr. Kistler, and the 09/11/2000 report of Dr. Sybert, and the 04/27/2000 C-84 of Dr. Kistler.
18. On June 30, 2001, another SHO mailed an order refusing relator's administrative appeal.
19. On December 14, 2001, relator, The Stouffer Corporation, filed this mandamus action.
Conclusions of Law:
The issue is whether there is some relied upon evidence of a new and changed circumstance justifying a new period of TTD compensation beginning April 27, 2000.
The magistrate finds that there is some relied upon evidence of a new and changed circumstance justifying a new period of TTD compensation beginning April 27, 2000. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
Effective August 22, 1986, R.C. 4123.56(A) provides that TTD compensation "shall not be made for the period * * * when the employee has reached the maximum medical improvement." It further provides:
 The termination of temporary total disability, whether by order or otherwise, does not preclude the commencement of temporary total disability at another point in time if the employee again becomes temporarily totally disabled.
Supplementing the statute, OAC 4121-3-32(A)(1) provides:
 "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
The syllabus of State ex rel. Bing v. Indus. Comm. (1991),61 Ohio St.3d 424, states:
 Even where temporary total disability compensation payments have been previously terminated, R.C. 4123.52
grants the Industrial Commission continuing jurisdiction to award temporary total disability compensation where the claimant has again become temporarily totally disabled. (R.C. 4123.52, construed and applied * * *.)
The Bing court dealt with the pre-August 22, 1986 version of R.C.4123.56. In Bing, the claimant applied for further TTD compensation after the commission had previously terminated TTD compensation on grounds that she had reached the point of maximum recovery (MMI) and was able to return to work. The commission denied further TTD on grounds that the issue was res judicata. As the syllabus of Bing indicates, the Bing court held that the commission retained continuing jurisdiction under R.C. 4125.52 to make later awards of TTD compensation where circumstances warrant. The Bing court rejected the commission's argument that the claimant was not entitled to further TTD because she allegedly experienced merely a temporary "flare-up" of her condition rather than any change in the overall severity of her injury. The Bing court explained:
 * * * A claimant who is temporarily totally disabled by a "flare-up" of an existing injury is no less unable to work — or less deserving of temporary total compensation than a claimant who is temporarily totally disabled by a worsening of an existing injury. Accordingly, we reject the Industrial Commission's argument. [Id at 427.]
The Bing court did not use the term "new and changed circumstances." However, in State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158, 169, the court made it clear that a new and changed circumstance (the need for surgery) could justify the reopening of a TTD award that had previously been terminated on MMI grounds. See, also, State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm. (1993),66 Ohio St.3d 267, 270.
The commission's granting of an additional claim allowance after a finding of MMI may be cause for resuming TTD compensation if the new claim allowance is not at MMI and other requirements for TTD compensation are met. See State ex rel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68; State ex rel. Richardson v. Quarto Mining Co. (1995), 73 Ohio St.3d 358. However, the granting of an additional claim allowance, after a finding of MMI, does not automatically resume TTD compensation. State ex rel. Vance v. Marikis (1999), 86 Ohio St.3d 305.
According to relator, the medical reports relied upon by the commission to support a new period of TTD compensation beginning April 27, 2000, present "an overall clinical picture" that is the same as the one presented to the commission in 1996, when no new and changed circumstances were found to justify reinstatement of TTD compensation. According to relator, between 1996 and 2000, there was no change in "radiculopathy, reports of legs giving way causing falls, lower extremity weakness, and need for surgery." The magistrate disagrees with relator's contention that claimant's overall clinical picture was the same in the year 2000 as it was in the year 1996 as indicated by the relied upon medical evidence.
The SHO's order of March 15, 2001, addresses the issue raised by relator here. Initially, the SHO's order refers to Dr. Kistler's May 30, 2000 report as reciting "steadily worsening conditions." In fact, in his May 30, 2000 report, Dr. Kistler opines that "symptoms have gotten worse" since claimant was advised by Dr. Dixon in February 1995, that she needs a second spinal surgery. Dr. Kistler's opinion that claimant's clinical picture has worsened is some evidence upon which the commission can rely to support a change of circumstance.
Moreover, the SHO's order of March 15, 2001, states reliance upon Dr. Sybert's September 11, 2000 report. In that report, Dr. Sybert supplies a critical factor that has changed since the commission's denial of TTD compensation in April 1996. Again, Dr. Sybert wrote:
 * * * At this point she has been managed with conservative care electing not to proceed with surgical fusion over the years, but her pain has deteriorated to the point that she now requests to proceed with surgical intervention because of her poor quality of life and chronic pain.
Pain is the critical factor identified in Dr. Sybert's September 11, 2000 report that justifies a change of circumstance and thus a new period of TTD compensation. Dr. Sybert indicates that "pain has deteriorated to the point" that claimant now requests to proceed with the surgery.
The magistrate recognizes that the pain factor inserts some subjectivity into the clinical picture. Nevertheless, it is within the realm of a doctor's expertise to take pain into account. It is within the commission's fact-finding discretion to weigh a doctor's opinion regarding pain. See State ex rel. Paraskevopoulos v. Indus. Comm. (1998), 83 Ohio St.3d 189, 191; State ex rel. Unger v. Indus. Comm. (1994), 70 Ohio St.3d 672, 676 (suggesting that the commission can abuse its discretion by failing to factor pain into its medical determination). Thus, Dr. Sybert's September 11, 2000 opinion that claimant's pain has deteriorated to the point that she now wants to proceed with the surgery is some evidence upon which the commission can rely to support a change of circumstance justifying a new period of TTD compensation.
Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.